UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ERIC MENDIS, *et al.*,

            Plaintiffs,

    v.

BMW OF NORTH AMERICA LLC, *et al.*,

            Defendants.

Case No. C22-922-MLP

ORDER

## I.    INTRODUCTION

This matter is before the Court on Defendant BMW of North America, LLC's ("BMW") Motion for Judgment on the Pleadings, contending the instant action was untimely filed and must be dismissed. (Mot. (dkt. # 20).) Plaintiffs Eric Mendis and Piumi Mendis (together, "Plaintiffs") filed an opposition (Resp. (dkt. # 23)), and BMW filed a reply (Reply (dkt. # 26)). Oral argument was held June 6, 2024. (Dkt. # 28.) Having considered the parties' submissions, oral argument, the governing law, and the balance of the record, the Court DENIES BMW's Motion (dkt. # 20).

## II.    BACKGROUND

In August 2019, Plaintiffs purchased a vehicle manufactured by BMW. (Compl. (dkt. # 1-1) at ¶ 4.1.) Plaintiffs allege the vehicle had wireless charging defects. (*Id.* at ¶¶ 4.2-4.6.)

ORDER - 1

1   Plaintiffs and BMW engaged in arbitration. (Compl. at ¶ 4.12; Wallace Decl. (dkt. # 21)
2   at ¶ 2, Ex. A (dkt. # 21-1).) The arbitrator issued a decision, signed on December 12, 2021,
3   denying Plaintiffs' request for relief. (Wallace Decl. at ¶ 3, Ex. B (dkt. # 21-2) at 17.) The
4   decision is stamped as received by the Attorney General's Office on December 16, 2021. (*Id.*,
5   Ex. B at 3.) The Attorney General's Office sent the decision by mail and email to Mr. Mendis
6   with a cover letter dated December 17, 2021. (*Id.* at 2.)

7   Plaintiffs rejected the arbitration decision. Mr. Mendis signed the rejection form on
8   January 25, 2022, and Ms. Mendis signed it on January 27, 2022. (Wallace Decl. at ¶ 4, Ex. C
9   (dkt. # 21-3); Mendis Decl. (dkt. # 24) at ¶¶ 4-5.) On February 3, 2022, Plaintiffs emailed the
10  Attorney General's office, attaching the signed rejection form, and asking for confirmation that
11  they "have 120 [days] from today to file the case" in superior court. (Wallace Decl. at ¶ 5, Ex. D
12  (dkt. # 21-4) at 2.) The same day, the Attorney General's Office responded: "This email confirms
13  that we have received your documents and are currently processing them. You are correct that
14  you can file in superior court and have 120 days from today." (*Id.*, Ex. D at 2.)

15  On June 1, 2022, Plaintiffs filed the instant action against Defendants BMW and Does
16  1-10 in King County Superior Court. (Compl.) Plaintiffs allege violation of Washington's Motor
17  Vehicle Warranties Act, RCW Ch. 19.118, and eleven other state and federal claims. On July 1,
18  2022, BMW removed the action to this Court. (Dkt. # 1.)

### III.   DISCUSSION

20  BMW contends Plaintiffs untimely filed this action, and thus the Court lacks jurisdiction.
21  (Mot. at 5-10.) Plaintiffs contend they timely filed and, in the alternative, that BMW should be
22  estopped from bringing the Motion. (Resp. at 4-7, 12.) Plaintiffs request attorney's fees for
23  responding to the Motion. (*Id.* at 13-14.)

ORDER - 2

### A. Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. *See* Fed. R. Civ. P. 12(c). When a Rule 12(c) motion is used as a vehicle for a Rule 12(b)(6) motion after an answer has been filed, or when it is functionally equivalent to a motion to dismiss for failure to state a claim, the same standard applies to both. *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017). Judgment on the pleadings is proper when there is "no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781, 796 (9th Cir. 2024). The Court must "accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Id.* (quoting *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)).

### B. Matters Outside the Pleadings

As a general rule, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim. *United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011). The Court may, however, consider materials submitted with and attached to the complaint. *Id.* at 999. "We may also consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.*

Plaintiffs allege they participated in arbitration under RCW 19.118.090(1). (Compl. at ¶ 4.12.) Arbitration is a necessary prerequisite to filing suit under Washington's Motor Vehicle Warranties Act. RCW 19.118.080(3). No party challenges the authenticity of the arbitration decision or Plaintiffs' rejection of that decision. (*See* Wallace Decl., Exs. C-D; Mendis Decl. at ¶¶ 3-5, Exs. A-B.) Accordingly, the Court will consider these materials.

Plaintiffs include letters to and from their counsel, BMW's counsel, and the Attorney General's Office, and proof of service. (Davidovskiy Decl. (dkt. # 25) at ¶¶ 3-5, 12, 14-15, Exs. A-F.) Plaintiffs' Complaint does not refer to these documents and they are not central to Plaintiffs' claims. Plaintiffs have identified no appropriate exception under which the Court may consider them. Accordingly, the Court declines to consider these documents.

### C. Statutory Construction

In determining the meaning of a statute, Washington courts "apply general principles of statutory construction. These principles begin with the premise that if a statute is plain and unambiguous, its meaning must be derived from the language of the statute itself." *Harmon v. Dep't of Soc. & Health Servs., State of Wash.*, 134 Wn. 2d 523, 530 (Wash. 1998) (citations omitted). "Ambiguity exists if the language of a statute is susceptible to more than one reasonable interpretation." *Id.* Where "a statute is ambiguous, resort to the tools of statutory construction is appropriate." *Id.*

If the Court finds the statute is ambiguous, the Court's "primary duty is to ascertain and give effect to the intent and purpose of the Legislature." *Harmon*, 134 Wn. 2d at 530. "Statutes should be construed to effect their purpose and unlikely, absurd or strained consequences should be avoided." *State v. Stannard*, 109 Wn. 2d 29, 36 (Wash. 1987). "Each part or section of a statute should be construed in connection with every other part or section 'so as to produce a harmonious whole[.]'" *State v. Akin*, 77 Wn. App. 575, 580 (Wash. Ct. App. 1995) (quoting *Platt Electric Supply, Inc. v. Seattle*, 16 Wn. App. 265, 273 (Wash. Ct. App. 1976), *review denied*, 89 Wn. 2d 1004 (Wash. 1977)).

ORDER - 4

**D.     Analysis**

Prior to filing suit under Washington's Motor Vehicle Warranties Act, consumers must exhaust arbitration remedies and notify the Attorney General's Office that they reject the arbitration decision. RCW 19.118.080(3), RCW 19.118.090(7). The consumer must file suit in superior court within 120 days of the "date of rejection." RCW 19.118.090(8). There is no dispute that if Plaintiffs did not timely file, this Court has no jurisdiction over the matter. (*See* Resp. at 12; Reply at 5.)

BMW contends "the plain language of the statute" indicates that the "date of rejection" is when "Plaintiffs signed and dated the rejection on January 27, 2022[.]" (Mot. at 6, 10.) An appeal to the superior court would thus be due by May 27, 2022. (*Id.*) Plaintiffs agree "the language of the statute is unambiguous" but contend the "date of rejection" here is February 3, 2022, the day they emailed the rejection and the Attorney General's Office received it. (Resp. at 5-7.) An appeal would be due by June 3, 2022, and their June 1, 2022 filing was thus timely. (*See* Compl.)

The statute provides in relevant part:

(6) The arbitration decision must contain a written finding . . .

> (c) The decision of the board shall be submitted to the attorney general who shall deliver it by certified mail, electronic mail confirmed by an electronic notice of delivery status or similar confirmation, or personal service to the consumer and the manufacturer.

(7) The consumer may accept or reject the arbitration board decision. Upon acceptance by the consumer, the arbitration board decision shall become final. The consumer shall send written notification of acceptance or rejection to the attorney general within sixty days of receiving the decision and the attorney general shall immediately deliver a copy of the consumer's acceptance to the manufacturer by certified mail, return receipt requested, electronic mail confirmed by an electronic notice of delivery status or similar confirmation, or by personal service. Failure of the consumer to respond to the attorney general within sixty calendar days of

ORDER - 5

> receiving the decision shall be considered a rejection of the decision by the consumer.
>
> (8) Where a consumer rejects an arbitration decision, the consumer may appeal to superior court pursuant to RCW 19.118.100. The consumer shall have one hundred twenty calendar days from the ***date of rejection*** to file a petition of appeal in superior court. At the time the petition of appeal is filed, the consumer shall deliver, by certified mail or personal service, a conformed copy of such petition to the attorney general.
>
> (9) Upon receipt of the consumer's acceptance, the manufacturer shall have forty calendar days to comply with the arbitration board decision or thirty calendar days to file a petition of appeal in superior court. At the time the petition of appeal is filed, the manufacturer shall deliver, by certified mail or personal service, a conformed copy of such petition to the attorney general. If the attorney general receives no notice of petition of appeal after forty calendar days, the attorney general shall contact the consumer to verify compliance.

RCW 19.118.090 (emphasis added).

The statute is not entirely clear on what event triggers the date of rejection. BMW argues it is the signature date on the rejection form, while Plaintiffs contend it is either the date they sent the form or the date the Attorney General's Office received it (which in this case are identical). The statute, however, does not expressly support either side's position. The statute does not mention date of signature anywhere. BMW essentially asks the Court to insert a definition of date of rejection as "date of signature" without support in the language of the statute, which the Court cannot do. *See State v. Arlene's Flowers, Inc.*, 193 Wn. 2d 469, 509 (Wash. 2019) ("When faced with a question of statutory interpretation, we 'must not add words where the legislature has chosen not to include them.'") (quoting *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn. 2d 516, 526 (Wash. 2010)).

The statute utilizes the date of receipt for when the consumer receives the arbitration decision and when the manufacturer receives the consumer's acceptance, but not when the Attorney General's Office receives the consumer's rejection. RCW 19.118.090(7) (consumer

ORDER - 6

shall send acceptance or rejection within 60 days of "receiving the decision"), (9) (manufacturer has 40 days from "receipt of the consumer's acceptance" to comply with decision). Based on this comparison, BMW argues the legislature did not intend date of rejection to mean date of receipt. (Reply at 1-2 ("the legislature knew how to trigger a deadline from the date of return of a form").) BMW's argument, however, leaves unclear what event does trigger the date of rejection.

Plaintiffs' argument that the date of rejection is triggered by sending the rejection finds some support in the statute. The statute provides the consumer "shall send" an acceptance or rejection to the Attorney General's Office. RCW 19.118.090(7). Failure of the consumer "to respond" is deemed a rejection. *Id.* Still, the statute does not expressly define date of rejection as the date of sending the form.

The Court concludes the statute is ambiguous, and thus turns to tools of statutory construction. In particular, the Court seeks to interpret the statute as a harmonious whole and to avoid absurd, strained, or unlikely consequences. *See Stannard*, 109 Wn. 2d at 36; *Akin*, 77 Wn. App. at 580.

The statute as a whole creates a process with deadlines based on events that are verifiable by the Attorney General's Office. Once the arbitration decision is submitted, the Office delivers it to the consumer and manufacturer by certified mail, email with delivery confirmation, or personal service—all methods that provide the Office with proof of receipt. RCW 19.118.090(6)(c). The customer has 60 days after "receiving the decision"—a date the Office can establish because it has proof of receipt—to accept or reject the decision. RCW 19.118.090(7). If the Office receives the consumer's acceptance, the Office delivers it to the manufacturer by the same methods providing proof of receipt. *Id.* If the consumer does not "respond" to the Office

ORDER - 7

1    with an acceptance or rejection within 60 days, it is deemed a rejection. *Id.* The Office can verify
2    when it received a response.
3          BMW's interpretation is inconsistent with the overall structure of the statute. Each step in
4    the statutory process is governed by dates that the Attorney General's Office can verify. The date
5    of signature, however, is unknown until the Office receives the document, and even then the
6    Office has no way to verify that the date written on the form accurately reflects the date the
7    consumer signed the form or the date the consumer made a final decision to reject the arbitration
8    decision. A consumer could, for example, sign the form on January 1 and not add the date until
9    January 10. Or a consumer could sign and date the electronic form, but not make the decision
10   whether to accept or reject the decision until a week later. (*See, e.g.*, Mendis Decl., Ex. B (dkt.
11   # 24 at 26) (form signed but neither the "accept" nor the "reject" box is checked).) The date of
12   signature would not reflect the date the consumer decided to reject the decision, and in no way
13   would be date of signature be the "date of rejection." The statute says nothing about when the
14   consumer, internally, made a decision to reject the decision. The statute is only concerned with
15   when and whether the consumer "send[s]" the rejection or "respond[s]" to the Attorney
16   General's Office. RCW 19.118.090(7).
17         Under BMW's interpretation, a consumer could sign a rejection before 60 days and never
18   submit it to the Office, but it would still set the deadline for filing an appeal (if uncovered
19   through discovery). Or a consumer could sign and date the form, checking the box to designate
20   an acceptance, but later change their mind and check the box for a rejection instead: the date the
21   consumer initially decided to *accept* the decision would then become the "date of rejection," a
22   clearly absurd result. BMW's interpretation is contrary to the clear statutory scheme to set

ORDER - 8

deadlines the Office can verify. Especially because an untimely filing deprives the Court of jurisdiction, it is unlikely the legislature would make the date of rejection difficult to determine.

Furthermore, BMW's interpretation fails to account for the situation here, with two consumers who co-own the vehicle. Mr. Mendis signed the rejection on January 25, 2022, and Ms. Mendis signed the rejection on January 27, 2022. (Wallace Decl., Ex. C; Mendis Decl. at ¶¶ 4-5.) BMW fails to explain why, under its interpretation, the statute supports selecting January 27, 2022, as the "date of rejection." (*See* Reply at 4 ("BMW NA took the later in time signature to review whether the appeal was timely.").) Under BMW's interpretation, two dates of signature should logically result in two deadlines for appeal on the same claim. Under the statute, however, an appeal is due 120 days from the "date of rejection," which appears to create a single deadline for appeal. RCW 19.118.090(7)-(8). At oral argument, BMW suggested the later date should be used as it is more consumer-friendly. (*See* dkt. # 28.) BMW's "consumer-friendly" argument is belied by BMW's effort to dismiss Plaintiffs' claims entirely by interpreting date of rejection as the date the form was signed, several days prior to being submitted.

BMW cites the portion of the statute relating to acceptance to argue that "the legislature knew how to trigger a deadline from the date of return of a form." (Reply at 2.) "Upon receipt of the consumer's acceptance, the manufacturer shall have forty calendar days to comply with the arbitration board decision or thirty calendar days to file a petition of appeal in superior court." RCW 19.118.090(9). But the Attorney General's Office can verify the manufacturer's receipt because the statute requires delivery methods that provide proof of receipt. RCW 19.118.090(7). The Office has no way of knowing when consumers have signed an acceptance or rejection—until the consumers "send [it] to the attorney general" or "respond to the attorney general" as

provided in the statute. *Id.* The portion of the statute BMW cites does not support its interpretation.

At oral argument, BMW suggested that the date of signature only becomes effective once the form is submitted to the Attorney General's Office. (*See* dkt. # 28.) BMW contends the form would not include a date of signature if it were not meaningful. (*Id.*) This interpretation assigns great meaning to the date of signature—but only once the form is sent, yet the date of sending it is deemed meaningless—without any reference in the statue to the date of signature. The Court rejects this strained interpretation of the statute.

The Court concludes BMW's interpretation of the statute, that "date of rejection" means the date of signature, is erroneous.[1] The Court need not determine whether the date of rejection is the date a consumer sends or the Attorney General's Office receives the rejection form, because here both are the same date. Because Plaintiffs timely filed their appeal within 120 days of the date of rejection, BMW's Motion is denied.

### E. Attorney's Fees

Plaintiffs contend they should be awarded attorney's fees pursuant to 28 U.S.C. § 1927. (Resp. at 13-14.) Plaintiffs argue fees are warranted because BMW should have filed this motion closer to the initiation of suit nearly two years ago; BMW was initially persuaded by Plaintiffs' interpretation of the statute; BMW should have been persuaded by communications from the

---

[1] The Court's conclusion is bolstered by the interpretive canon that jurisdiction-stripping statutes should be construed narrowly. *See ANA Int'l, Inc. v. Way*, 393 F.3d 886, 891 (9th Cir. 2004) ("[A]s a matter of the interpretive enterprise itself, the narrower construction of a jurisdiction-stripping provision is favored over the broader one."). "Where a jurisdictional attack is mounted against a claim that implicates statutory interpretation, the court should refrain from dismissing where an interpretation is available that supports jurisdiction." *Morgan Hill Concerned Parents Assoc. v. California Dep't of Educ.*, 2013 WL 1326301, at *3 (E.D. Cal. Mar. 29, 2013) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("The district court has jurisdiction if the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.") (cleaned up)).

ORDER - 10

Attorney General's Office indicating the appeal deadline began when the Office received the rejection; and Plaintiffs' counsel advised they would seek attorney's fees if the motion was filed. (*Id.*)

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The statute sets a high bar. "Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Blixseth v. Yellowstone Mtn. Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015) (quoting *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989)). "[B]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument[.]" *Id.* "For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass." *In re Keenan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996).

Plaintiffs have not made any argument that BMW filed its Motion recklessly and frivolously, or to harass. Section 1927 "sets a very high threshold" for sanctioning attorneys. *Ortego v. Lummi Island Scenic Ests. Cmty. Club, Inc.*, 2017 WL 1210065, at *2 (W.D. Wash. Apr. 3, 2017), *aff'd*, 738 F. App'x 912 (9th Cir. 2018). The Court "starts its analysis with the presumptions that an award of fees is not appropriate and that counsels' conduct falls within the acceptable realm of zealous advocacy, untainted by bad faith." *Id.* The Court finds Plaintiffs have not overcome the presumption of good faith. The record here does not establish intentional misconduct, bad faith, or a filing that was both frivolous and submitted recklessly. Accordingly, the Court declines to award attorney's fees pursuant to § 1927.

ORDER - 11

## IV. CONCLUSION

For the foregoing reasons, BMW's Motion (dkt. # 20) is DENIED.

Dated this 10th day of June, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 12