1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ERIC MENDIS,

                           Plaintiff,

     v.

BMW OF NORTH AMERICA LLC, *et al.*,

                           Defendants.

Case No. C22-922-MLP

ORDER

14

## I.       INTRODUCTION

15

      This matter is before the Court on Plaintiff Eric Mendis's ("Plaintiff" or "Mr. Mendis")

16

(1) Motion to Compel Discovery (Mot. Compel (dkt. # 44)); and (2) Motion for Sanctions

17

Against Defendant BMW of North America, LLC ("Defendant" or "BMW NA") (Mot.

18

Sanctions (dkt. # 80)). Defendant filed oppositions to both Motions (Resp. Compel (dkt. # 48);

19

Resp. Sanctions (dkt. # 84)) and Plaintiff filed replies (Reply Compel (dkt. # 58); Reply

20

Sanctions (dkt. # 87)).[1] The Court held oral argument on both motions. (Dkt. # 89; *see also* dkt.,

21

4/10/25.) Having considered the parties' briefing, oral argument, the governing law, and the

22

23

---

[1] Defendant filed a surreply (dkt. # 64) seeking to strike a new argument in Plaintiff's reply supporting the Motion to Compel, which is hereby DENIED as moot.

ORDER - 1

balance of the record, the Court GRANTS in part and DENIES in part the Motion to Compel (dkt. # 44) and DENIES the Motion for Sanctions (dkt. # 80).

## II.    BACKGROUND

Mr. Mendis purchased a new 2019 BMW X5 vehicle in 2019 and alleges it is defective because his iPhone overheats when using the vehicle's wireless charging device. (Compl. (dkt. # 1-1) at ¶¶ 4.1-4.3 ("iPhone overheating over 113F while charging wirelessly").)) Plaintiff brought this action against BMW NA, which subsequently removed the case to this Court in July 2022, along with unnamed defendants John Does 1-10. (Dkt. # 1.) BMW NA serves as the U.S. distributor of BMW vehicles, but it does not design or manufacture them. (Holguin Decl. (dkt. # 73), ¶ 5.)

On March 3, 2025, Plaintiff filed the Motion to Compel (Mot. Compel), and oral arguments were heard by the Court on April 10, 2025 (the "April 10 Hearing"). At this hearing, the Court issued several oral rulings, instructed the parties to submit an electronically stored information ("ESI") agreement, and ordered Defendant to file a declaration addressing its ESI searches, while taking the remainder of the motion under advisement. (*See* dkt. 4/10/25.) Luis Holguin, a lead engineer in the technical services division for Defendant, filed the required declaration on April 24, 2025. (Holguin Decl.)

Subsequently, on May 7, 2025, Plaintiff filed the Motion for Sanctions, requesting the Court strike Defendant's answer and enter a default judgment against Defendant. (Mot. Sanctions at 14.) On June 3, 2025 (the "June 3 Hearing"), the Court held oral argument addressing the remaining issues related to the Motion to Compel and the Motion for Sanctions. (*See* dkt. # 89.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## III.    DISCUSSION

### A.    Motion to Compel

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The party seeking to compel discovery has the burden of establishing that its requests are relevant, *see id.*, while the party resisting discovery has the burden to show that discovery should not be allowed and to explain and support its objections with competent evidence. *Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash. 2018).

Plaintiff seeks fuller responses to several interrogatories and requests for production ("RFP"). (Mot. Compel.) Below, the Court summarizes its oral rulings from the April 10 Hearing and addresses all remaining issues.

### 1.    *Interrogatory No. 3, RFP No. 1*

Plaintiff requested all advertisements related to his vehicle, including the wireless charger. (BMW Responses (First Davidovskiy Decl. (dkt. # 45), Ex. 2) at 4-5.) Defendant responded that the request was "overly broad because it is not limited to the charging unit" and that it found no advertisements "related to the . . . wireless charging unit[.]" (*Id.* at 4.) During the April 10 Hearing, Plaintiff argued that he needed to see all advertisements because ads showing a driver charging an iPhone would suggest compatibility. The Court limited discovery to advertisements specifically about wireless charging capabilities. Accordingly, the Motion to Compel is denied as to Interrogatory No. 3 and RFP No. 1.

### 2.    *Interrogatory No. 7, RFP No. 5*

Plaintiff asked whether the charger had been "certified for Apple/iPhone mobile devices with the Federal Communications Commission ('FCC')[.]" (BMW Responses at 8.) Defendant

responded that the charger "complies with part 15 of the FCC rules" and provided a link to a publicly available FCC report filed by the charger's manufacturer, Laird Dabendorf GmbH ("Laird"). (*Id.*) At the April 10 Hearing, the Court determined that Defendant had already provided complete answers, *i.e.*, that Laird—not BMW NA—had obtained FCC certification. Accordingly, the Motion to Compel is denied as to Interrogatory No. 7 and RFP No. 5.

### 3.    *RFP No. 23*

Plaintiff sought records and testing reports "from FCC, Wireless Power Consortium, and Qi Wireless Charging" related to all iPhones and other Apple mobile devices. (BMW Responses at 22.) Defendant referenced Laird's testing and approvals. (*Id.* (citing *id.* at 17).) At the April 10 hearing, the Court found that Defendant had provided all responsive information. Accordingly, the Motion to Compel is denied with respect to RFP No. 23.

### 4.    *Interrogatory No. 5, RFP No. 3*

Plaintiff sought information about "all steps and precautions, if any," that BMW NA took to ensure the charger was compatible with, and did not overheat, iPhones. (BMW Responses at 6-7.) Defendant responded that it did not manufacture the charger and was "unaware of any independent testing undertaken by BMW NA of the wireless charging device." (*Id.* at 7.)

At the April 10 Hearing, the Court ordered Defendant to provide a declaration clarifying whether it had taken any steps or precautions. Mr. Holguin confirmed that "BMW NA did not undertake any independent testing of the wireless charging device and did not independently take any steps or precautions to ensure [it] was compatible with iPhones." (Holguin Decl., ¶ 5.) Accordingly, the Motion to Compel is denied as to Interrogatory No. 5 and RFP No. 3.

1          5.      *Interrogatory No. 13, RFP Nos. 11 and 44*

2          Plaintiff requested all non-privileged communications or notes of conversations relating

3   to his vehicle. (BMW Responses at 13-14.) Defendant objected that the requests were overbroad

4   because they were not limited to the charger, but produced correspondence with Mr. Mendis and

5   repair records. (*Id.* at 14; First Davidovskiy Decl., Ex. 4 at 177-94, 221-30.)

6          Plaintiff argues that Defendant has not produced all relevant documents, citing an email

7   message he received after subpoenaing BMW Seattle, the dealership where Mr. Mendis

8   purchased his vehicle. That email was sent by Dean Tatro, the BMW Seattle shop foreman, to

9   Jordan Cook, a BMW NA engineer. (Second Davidovskiy Decl. (dkt. # 59), ¶ 7, Ex. 4 at 28-29.)

10  Mr. Tatro described testing Mr. Mendis's wireless charger. (*Id.*) At the April 10 Hearing,

11  Plaintiff acknowledged that after he provided Defendant with a full copy of Mr. Tatro's email,

12  Defendant located and produced it. Plaintiff argues that the long delay in producing Mr. Tatro's

13  email, however, suggests that more relevant emails may have been withheld. (*See* Reply Compel

14  at 5-6.)

15         At the April 10 Hearing, the Court ordered Defendant to explain why Mr. Tatro's email

16  was not found in its prior ESI searches. Mr. Holguin explained that the email was initially missed

17  because it was "unusual" for an engineer to communicate directly with a dealership without

18  copying Customer Relations ("CR"), and thus the email was not stored in the CR database as it

19  should have been. (Holguin Decl., ¶ 8.) Once Defendant became aware of the correspondence, it

20  searched Mr. Cook's email account and produced the Tatro email chain to Plaintiff. (*Id.*)

21         To the extent Plaintiff argues that Defendant intentionally withheld Mr. Tatro's email or

22  is intentionally withholding other relevant emails, that issue will be addressed below in the

23  context of the Motion for Sanctions. Otherwise, Plaintiff has not shown that Defendant is

withholding additional responsive discovery. *See Dichter-Mad Fam. Partners, LLP v. United States*, 709 F.3d 749, 751 (9th Cir. 2013) ("It is well-established that the burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists.") (quoting *Gager v. United States*, 149 F.3d 918, 922 (9th Cir. 1998)); *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 94 (D.D.C. 2017) (A "single example [of an unproduced email] is not sufficient indication of an inadequate search."). Accordingly, the Motion to Compel is denied as to Interrogatory No. 13 and RFP Nos. 11 and 44.

        6.     *RFP No. 28*

Plaintiff requested Defendant's document retention policies and Defendant objected to "discovery on discovery." (BMW Responses at 24.) At the April 10 Hearing, Plaintiff argued that because certain evidence, such as Mr. Tatro's email, had not been produced, he needed to review Defendant's document retention policies. The Court ruled that Plaintiff was not entitled to the document retention policy because there was no evidence that Defendant engaged in intentional destruction of evidence. Accordingly, the Motion to Compel is denied with respect to RFP No. 28.

        7.     *Interrogatory No. 16, RFP No. 14*

Plaintiff requested information on any judicial or administrative proceeding, consumer protection agency, or customer complaint related to the charging unit. (BMW Responses at 16.) Defendant responded that it "found no litigated claims involving allegations [of] wireless charger overheating in 2019 X5 x40i vehicles in the last five years." (*Id.*)

At the April 10 Hearing, the Court ruled that discovery should not be limited to litigated claims but should also include customer complaints and any complaints filed in administrative or

judicial proceedings or consumer protection agencies. Accordingly, the Motion to Compel is granted as to Interrogatory No. 16 and RFP No. 14.

### 8. Request for Attorneys' Fees and Costs

Plaintiff requests an award of expenses pursuant to Fed. R. Civ. P. 37(a). (Mot. Compel at 14.) If a motion to compel is granted or denied, the Court must award reasonable expenses for bringing or opposing the motion to the prevailing party. Fed. R. Civ. P. 37(a)(5)(A)-(B). Where a motion to compel is granted in part and denied in part, a court may "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Here, the Court denied Plaintiff's Motion to Compel on six of the seven categories of discovery sought. Because Defendant prevailed almost entirely here, its compensable expenses would significantly outweigh Plaintiff's. Accordingly, the Court concludes Plaintiff is not entitled to an award of expenses.

### B. Motion for Sanctions

Plaintiff seeks default judgment in this action, asserting that Defendant cannot be trusted and therefore this action has been irreparably compromised. Plaintiff cites: (1) the failure to timely produce Mr. Tatro's email and emails with Apple; (2) Mr. Cook's "perjured" testimony during arbitration that he had not seen Mr. Tatro's email; and (3) Mr. Cook's email to dealerships discouraging writing up complaints about phones heating while charging. (Mot. Sanctions at 2, 4, 6, 8.) Plaintiff contends the Court may impose sanctions under Rules 16 and 37(b)(2) because Defendant failed to comply with its discovery obligations within the time provided by the Court's scheduling order. (*Id.* at 11.) He argues case-dispositive sanctions are warranted because "[w]here a party destroys the foundation of truth, resolution on the merits becomes impossible." (Reply Sanctions at 8.)

1      Defendant contends Plaintiff imputes nefarious intent without evidentiary support,

2  particularly because there was no advantage to concealing any of the items complained about.

3  (Resp. Sanctions.) Defendant further asserts that "Plaintiff is attempting to generate a discovery

4  dispute to avoid litigating the substantive question of whether there is a defect in the material or

5  workmanship in the [charging unit]." (*Id.* at 3.)

6      *1.    Legal Standards*

7      "The standard for evaluating discovery is reasonableness, not perfection." *Prasad*, 323

8  F.R.D. at 93 (quoting *Agerbrink v. Model Service LLC*, 2017 WL 933095, at *5 (S.D.N.Y. Mar.

9  8, 2017)). While parties must "conduct a reasonable search when responding to [discovery]

10  requests, the Federal Rules do not demand perfection." *Reinsdorf v. Skechers U.S.A., Inc.*, 296

11  F.R.D. 604, 615 (C.D. Cal. 2013).

12      Discovery violations may, in the appropriate circumstance, be grounds for case-

13  dispositive sanctions. "Termination is a harsh sanction that is justified only by 'willfulness, bad

14  faith, and fault.'" *Corker v. Costco Wholesale Corp.*, 2022 WL 2490496, at *5 (W.D. Wash. July

15  6, 2022) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003)). "Disobedient

16  conduct not shown to be outside the control of the litigant is sufficient to demonstrate

17  willfulness, bad faith, or fault." *Jorgensen*, 320 F.3d at 912 (quoting *Hyde & Drath v. Baker*, 24

18  F.3d 1162, 1166 (9th Cir. 1994)). If the requisite intent is shown, courts in the Ninth Circuit

19  apply a five-factor test to determine whether case dispositive sanctions under Rule 37(b)(2) are

20  warranted: (1) the public's interest in expeditious resolution; (2) the court's docket management

21  needs; (3) prejudice to the moving party; (4) public policy favoring disposition on the merits; and

22  (5) the availability of less drastic sanctions. *Id.* at *7 (quoting *Hester v. Vision Airlines, Inc.*, 687

23  F.3d 1162, 1169 (9th Cir. 2012)).

2.    *Late-Produced Discovery*

Plaintiff argues that Defendant's failure to identify certain documents in its initial productions violated its discovery obligations. With respect to Mr. Tatro's email, Plaintiff initially provided Defendant with a photograph showing a partial view, but the identity of the recipient was missing. (*See* Reply Compel at 3.) After Plaintiff provided a full copy, Defendant located the email and produced it. (Second Davidovskiy Decl. (dkt. # 59), ¶ 7, Ex. 4 at 28-29; Resp. Sanctions at 2.) Plaintiff argues that Defendant was obligated to inquire from the beginning with key employees such as Mr. Cook, who inspected Mr. Mendis's vehicle and is also serving as an expert for Defendant. (Mot. Sanctions at 5.) While Defendant's ESI searches may have been imperfect, that does not demonstrate willfulness or bad faith and is not grounds for sanctions.

Plaintiff also argues that Mr. Cook committed perjury by "unequivocally den[ying] any knowledge of" Mr. Tatro's email, which was sent in February 2020, during arbitration testimony in November 2021. (Mot. Sanctions at 8.) The transcript indicates Mr. Mendis showed Mr. Cook the partial view of the email and asked if he had seen it before, to which Mr. Cook replied, "No, I don't think so." (Third Davidovskiy Decl. (dkt. # 81), ¶¶ 3-4, Ex. 2 at 75:19-21; *see id.* at 73:18-74:9 ("I'm not sure where this came from to be honest with you.").) Plaintiff's argument that Mr. Cook "unequivocally denied any knowledge" of Mr. Tatro's email is unsupported. It is not reasonable to interpret "No, I don't think so" and "I'm not sure" as an unequivocal denial. Moreover, it is hardly implausible that a person would not remember an email received nearly two years prior. Plaintiff fails to demonstrate willfulness or bad faith.

Plaintiff further contends Defendant deliberately concealed evidence of Mr. Tatro's February 2020 inspection by submitting records showing the vehicle had been returned to Mr.

1    Mendis five days earlier. (Mot. Sanctions at 10.) Defendant explains that "service records are

2    created and maintained by dealerships"; thus, any missing records would be the responsibility of

3    BMW Seattle. (Resp. Sanctions at 9 (citing Second Davidovskiy Decl. at 62-88 (invoices and

4    warranty records from BMW Seattle)).) Plaintiff offers no evidence countering Defendant's

5    explanation.

6            Plaintiff next cites an email that Mr. Cook sent to dealerships in June 2021 with the

7    subject line "Wireless Charging, device getting warm/hot complaints." (Mot. Sanctions at 4.) Mr.

8    Cook wrote: "I would discourage the vehicle from even being written up for it, so educating the

9    advisors to communicate that this is a normal condition would be a best practice." (*Id.*) Plaintiff

10   argues this was a "clear effort to prevent" creating service records reflecting overheating

11   problems. (Mot. Sanctions at 4.) He further argues that Defendant's failure to produce the email

12   "utterly discredits" its claim to have met its discovery obligations. (*Id.* at 4-5.) Plaintiff offers no

13   evidence, however, that Defendant intentionally withheld the email.

14           Plaintiff also points to email messages between Apple and BMW NA, which Defendant

15   disclosed on April 8, 2025. (Mot. Sanctions at 6.) In the emails, an Apple corporate executive

16   relations representative stated that Apple's engineers confirmed Mr. Mendis's iPhone devices

17   were "functioning as they should," and "highly suggested getting the integrated charger replaced

18   or looked at[.]" (Dkt. # 77 at 62.) Again, Plaintiff provides no proof that Defendant intentionally

19   withheld the email.

20                   *3.      No Evidence of Bad Faith*

21           Plaintiff provides no evidence that any of the late-produced discovery was intentionally

22   withheld. Defendant produced Mr. Tatro's email as soon as it received enough information to

23   identify it. Defendant does not dispute that it was required to turn over the Tatro, Cook, and

Apple emails, and it ultimately did so; nor does Defendant dispute that better searches may have turned up the emails earlier. Nevertheless, the standard here is not perfection. Sanctions are not warranted where there is no evidence of willfulness or bad faith.[2]

Plaintiff argues that the Court should infer bad faith because the late-produced emails are so damaging to Defendant's case. (*See* Mot. Sanctions at 3-4; Reply Sanctions at 3, 5.) The parties differ in their interpretations as to whether the emails harm Defendant's case. Plaintiff argues Mr. Tatro's and Mr. Cook's emails substantiate Mr. Mendis's claims of overheating, and the Apple emails raise safety issues and imply that fault lies with BMW's charger. (*Id.* at 3-4, 6-7.) Defendant contends the emails support its defenses. (*See* Resp. Sanctions at 2 ("they support [Defendant's] argument that there were no defects in the material or workmanship of the [charger]"), 6 ("this is an issue of misuse").) That issue remains to be resolved at trial.

The Court finds no evidence of willful discovery failures. Accordingly, sanctions are inappropriate.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's Motion to Compel (dkt. # 44). Defendant's surreply (dkt. # 64) seeking to strike a new argument in Plaintiff's reply is DENIED as moot. The Court DENIES Plaintiff's Motion for Sanctions (dkt. # 80).

Dated this 12th day of June, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge

---

[2] Plaintiff emphasizes that the emails and ESI searches were within Defendant's control. (*See* Mot. Sanctions at 15 (citing *Jorgensen*, 320 F.3d at 912).) "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Jorgensen*, 320 F.3d at 912. Plaintiff fails to show any disobedient conduct, however.