UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERIC MENDIS, *et al.*,<br><br>       Plaintiffs,<br><br>   v.<br><br>BMW OF NORTH AMERICA LLC, *et al.*,<br><br>       Defendants. | Case No. C22-922-MLP<br><br>ORDER |

### I.    INTRODUCTION

This matter is before the Court on Defendant BMW of North America, LLC's ("Defendant" or "BMW NA") Motion for Summary Judgment. (Mot. (dkt. # 51).) Plaintiff Eric Mendis ("Plaintiff" or "Mr. Mendis") filed an opposition (Resp. (dkt. # 110)), and Defendant filed a reply (Reply (dkt. # 118)). In its Reply, Defendant moves to strike the declarations Plaintiff provided with his Response. (*Id.* at 9-15.) Plaintiff and Defendant have also each filed a motion to exclude expert testimony, to which responses and replies were filed. (Dkt. ## 54, 60, 79, 90, 95, 97, 110, 118.) On July 28 and 29, 2025, the Court held oral argument on all three motions. (Dkt. ## 121, 124.)

ORDER - 1

Having considered the parties' briefing, oral argument, the governing law, and the balance of the record, the Court hereby GRANTS Defendant's Summary Judgment Motion (dkt. # 51) and GRANTS in part Defendant's Motion to Strike (dkt. # 118 at 9-15).[1] Accordingly, Dr. Hernandez's declaration (dkt. # 113) is stricken, as is Mr. Mendis's declaration (dkt. # 110) to the extent it offers legal argument. Because the Court concludes the motions to exclude would not change this Court's summary judgment ruling, the Court DENIES the motions to exclude as moot (dkt. ## 54, 60).

## II.   BACKGROUND

In August 2019, Mr. Mendis purchased a new 2019 BMW X5 vehicle from Lithia, doing business as BMW Seattle. (Compl. (dkt. # 1-1), ¶ 4.1; *see also* First Pitsch Decl. (dkt. # 53), ¶¶ 2, 4, Exs. A, C.) Shortly thereafter, he alleges the vehicle exhibited defects, including overheating of his iPhone while charging wirelessly. (Compl., ¶ 4.2.) At his February 2021 deposition, Mr. Mendis testified that he continues to drive the car and charges his phone via a USB cable. (Mendis Dep. (First Pitsch Decl., Ex. B) at 18:24-19:9.)

In November 2021, Mr. Mendis and BMW NA participated in arbitration before the New Motor Vehicle Arbitration Board. (Dkt. # 24 at 8.) Plaintiff alleged the "wireless charger if used causes Iphone [*sic*] to overheat." (*Id.* at 10.) His request for relief was denied, and the claim was dismissed. (*Id.* at 6.) The Board concluded "[n]o defect(s) were found to meet the definition of a Nonconformity or Serious safety defect" under Washington's Motor Vehicle Warranties Act ("MVWA"), RCW 19.118.041(2). (*Id.* at 7; *see id.* at 10.)

---

[1] The Court declines to strike material challenged as hearsay, however, because it must consider whether such evidence could be presented in admissible form at trial. *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016).

ORDER - 2

Plaintiff filed the instant action in King County Superior Court, and Defendant removed it to this Court in July 2022. (Dkt. # 1.) Plaintiff alleges the vehicle is defective because his iPhone overheats to unsafe levels while using the vehicle's wireless charging tray, and "[w]ireless charging is not compatible with an iPhone despite Defendants' advertisements and representations to the contrary." (Compl., ¶¶ 4.2-4.3 ("iPhone overheating over 113F while charging wirelessly").) BMW NA is the U.S. distributor of BMW vehicles and does not design or manufacture them. (Dkt. # 73, ¶ 5.)

To support his claims, Plaintiff retained Dr. Edwin Hernandez Mondragon, Ph.D., who proffered an expert opinion that the charger was defective because it was incompatible with Mr. Mendis's iPhone XS Max. (Hernandez Report and Rebuttal (dkt # 55-1)).) Defendant offered expert testimony from Jordan Cook, a BMW technician, who found no safety defect in the vehicle or charging system and concluded that phone heating during charging is not solely caused by the charger. (Cook Report (First Cook Decl. (dkt # 52), ¶ 2, Ex. A) at 14.) Both parties seek to exclude the other's expert testimony. (*See* dkt. ## 54, 60.)

Plaintiff brings claims under the Motor Vehicle Warranties Act ("MVWA"), RCW 19.118; Auto Dealers and Manufacturers Act ("ADMA"), RCW 46.70; Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301; Washington Consumer Protection Act ("WCPA"); implied warranty of merchantability; and common law warranty. (Compl.) To prevail on each claim, Plaintiff must prove a defect existed in his vehicle or that Defendant made a misrepresentation. Defendant seeks summary judgment on the grounds that Plaintiff has presented no competent evidence of any defect or misrepresentation. (*See* Mot.)

ORDER - 3

## III. DISCUSSION

### A. Summary Judgment Standards

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. This burden can be met by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

Genuine disputes exist when the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. It is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoted source omitted). The Court need not "scour the record in search of a genuine issue of triable fact." *Id.* (quoted source omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56). However, "at summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016).

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see McElyea v. Babbitt*, 833 F.2d 196, 197-98 n. 1 (9th Cir. 1987) (per curiam).

**B.      Motor Vehicle Warranty Act**

Under the MVWA, a consumer may bring a claim if a new motor vehicle's failure to conform to its warranty constitutes either a life-threatening "serious safety defect" or a nonconformity that "substantially impairs the use, value, or safety of a new motor vehicle[.]" RCW 19.118.021(14), (19), (21). Plaintiff contends "a defect in the wireless charger caused the overheating" of his iPhone. (Resp. at 18.) Defendant seeks summary judgment dismissing the MVWA claim because Plaintiff has offered no evidence of any nonconformity, whether serious safety defect or substantial impairment. Defendant contends Plaintiff "simply attributes the effect

ORDER - 5

(alleged overheating) to a cause (defect in the Charging Tray) but provides no actual evidence proving that the Charging Tray is defective." (Mot. at 7.)

Plaintiff argues he has provided evidence of a defect consisting of: (1) Mr. Mendis's tests in his vehicle; (2) Apple's assertion that his iPhones were working properly; (3) BMW Seattle technician Dean Tatro's testing Mr. Mendis's vehicle; (4) Mr. Cook directing BMW technicians not to document overheating; (5) Defendant obtaining certification of a wireless charger after this lawsuit was filed; (6) Defendant not testing the charger "despite representing the system as universally compatible"; (7) Dr. Hernandez's opinions; (8) Defendant mischaracterizing the charger as a "dumb cable"; (8) Defendant withholding evidence, supporting an inference of suppression; and (9) consumer complaints of overheating. (Resp. at 19-23.)

Most of the proffered documents shed no light on whether there is a defect in Mr. Mendis's vehicle. Plaintiff's argument that Defendant's withholding of evidence supports an inference of suppression has already been rejected by this Court. (*See* dkt. # 93.) Similarly, Mr. Cook's instruction to technicians that overheating is normal provides no evidence of a defect in Mr. Mendis's vehicle. Plaintiff argues that Mr. Cook was "attempting to shield BMW NA from liability," but this assumes a defect without evidence. (Resp. at 19-20.) Defendant obtaining certification after the litigation commenced, or testing or not testing the charger, or mischaracterizing the charger, is also not evidence of any defect in the charger.

In April 2021, Lupita Vazquez, an Apple Inc. Corporate Executive Relations employee, emailed a BMW NA Executive Customer Care employee, stating that "our Engineers have confirmed [Mr. Mendis's] devices are functioning as they should, and have highly suggested getting the integrated charger replaced or looked at." (Vazquez Decl. (dkt. # 112), ¶ 4, Ex. 1.) There is no explanation of how engineers confirmed normal functioning or what "functioning as

ORDER - 6

they should" entails. It is unclear why Mr. Mendis accepted at face value Apple's assertion that its products were not causing the overheating but not BMW's. Ms. Vazquez's email, at most, reflects Apple's belief, based on unspecified information, that its products were not responsible for the overheating, and thus, the charger might be. The email fails to provide any evidence of a defect in the wireless charger in Mr. Mendis's vehicle.

This leaves customer complaints, Dr. Hernandez's opinions, and Mr. Mendis's and Mr. Tatro's testing. Plaintiff submits customer complaints produced by Defendant in discovery,[2] arguing they show evidence of a defect because, in some cases, BMW technicians were able to replicate the overheating issue in response to similar complaints, determined the charger was faulty and replaced it, and the problem ceased. (Resp. at 22-23.) Defendant raises hearsay and relevance objections. (Reply at 13.) Setting aside the hearsay issue, Plaintiff contends "other incidents" can provide "direct proof" of a defect. (Resp. at 23 n. 26 (citing *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)).) "A showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect." *Cooper*, 945 F.2d at 1105. This is because "evidence of dissimilar accidents lacks the relevance required for admissibility under Federal Rules of Evidence 401 and 402." *Id.* The "similar circumstances requirement is much more strenuous when the evidence is being offered to show the existence of a dangerous condition or causation and less strict where the evidence is being offered to show notice." *Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 889 (9th Cir. 1991).

---

[2] Plaintiff also provides several pages showing online complaints about BMW wireless charging, but does not refer to them in his opposition or make any showing as to how they support his arguments. (*See* Third Davidovskiy Decl. (dkt. # 119), ¶ 9, Ex. 7.)

ORDER - 7

1    Plaintiff has made no showing of substantial similarity. There is no indication whether
2    any complaints involve the same type of wireless charger as in Mr. Mendis's vehicle. Without
3    clarity as to what types of chargers were in the vehicles when overheating was complained of or
4    what types of chargers they were replaced with, the complaints do not demonstrate any alleged
5    defect in Mr. Mendis's charger. The Court concludes the customer complaints are irrelevant to
6    show a defect and should not be considered on summary judgment.[3]

7    Regarding Dr. Hernandez's opinions, Plaintiff argues that Dr. Hernandez "concluded that
8    BMW's wireless charging unit is defective" because it "does not exhibit the required safety
9    behaviors—such as thermal regulation and power negotiation—expected of compliant Qi
10   transmitters." (Resp. at 21.) Plaintiff does not point to where in his reports Dr. Hernandez states
11   this, and the Court cannot find any such statement. Dr. Hernandez never indicated that he
12   measured any behaviors of any wireless charger, nor conducted any testing. He reports he
13   disassembled a BMW charger like Mr. Mendis's and observed the internal components.
14   (Hernandez Report (Second Pitsch Decl. (dkt. # 55), ¶ 2, Ex. A (dkt. # 55-1 at 1-340)), ¶¶ 26-27.)

15   Plaintiff submits two reports by Dr. Hernandez: an expert report and a rebuttal to Mr.
16   Cook's expert report.[4] Dr. Hernandez's expert report, dated March 7, 2022, opined that the

---

[3] Plaintiff argues the complaints may be admitted for non-hearsay purposes such as to show ability to remedy a defect or magnitude of danger involved. (Resp. at 23 n. 26.) But this does not help him identify sufficient evidence of any defect itself to defeat summary judgment.

[4] With his opposition brief, Plaintiff provides a declaration by Dr. Hernandez offering new opinions, including that "[a] wireless charger transmitting under 5 watts is not inherently safe[.]" (Second Hernandez Decl. (dkt. # 113), ¶ 15.) The Court grants Defendant's motion to strike this attempt to add new expert opinions long after the deadline has passed (Reply at 9-10). *See, e.g.*, *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105 (9th Cir. 2001) (upholding exclusion of expert rebuttal report disclosed more than a year after opposing expert's report and only 28 days before trial); *Martinez v. Costco Wholesale Corp.*, 336 F.R.D. 183, 189 (S.D. Cal. 2020) (Allowing new opinions "whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation."). Moreover, even if the Court considered the new opinions, it would not change the Court's analysis.

ORDER - 8

charger generated more power than an iPhone could handle. (Hernandez Report.) On February 14, 2024, Mr. Cook issued his expert report. (Cook Report.) He tested two iPhones in Mr. Mendis's vehicle and found that they warmed while charging but did not reach an unsafe temperature and could be handled normally. (*Id.*, ¶ 2.4.1.) He opined that the phone manages its temperature while charging, overheating cannot be exclusively attributed to charging, and no phone in Mr. Mendis's vehicle reached an unsafe temperature. (*Id.* at 14.) On September 23, 2024, Dr. Hernandez issued a rebuttal to Mr. Cook's expert report, opining that Defendant had conducted insufficient testing and the charger could have caused iPhones to overheat. (Hernandez Rebuttal (Second Pitsch Decl., ¶ 3, Ex. B (dkt. # 55-1 at 341-438)).)

      In his report and rebuttal, Dr. Hernandez opined that the wireless charger uses integrated circuits and components to "manage" wireless charging and could produce 15W of power, exceeding the 7.5W "specified" by Apple. (Hernandez Report, ¶¶ 61, 64.) Dr. Hernandez also initially stated that the charger was not Qi certified, but he later conceded it had been certified by its manufacturer. (*Id.*, ¶ 65; Hernandez Rebuttal, ¶¶ 36, 48.) Even if accepted, none of these opinions as to the charger's capabilities and certification identify any defect.

      Dr. Hernandez noted that the charger at issue here was Qi certified under version 1.2.3, while Mr. Mendis's iPhone was Qi certified under version 1.2.4. (Hernandez Rebuttal, ¶¶ 36, 48.) Dr. Hernandez opined that Defendant should have tested the charger by wirelessly charging iPhones with version 1.2.4 Qi certification that were simultaneously using CarPlay. (*Id.*, ¶¶ 64, 66.) What testing Defendant should have performed, however, does not identify any defect. Dr. Hernandez also opined that, because the charger was certified with version 1.2.3, overheating "could have been triggered with an iPhone XS using Qi-certification version 1.2.4" like Mr. Mendis's phone. (Hernandez Rebuttal, ¶ 67.) Dr. Hernandez's conclusory opinion that

ORDER - 9

overheating "could" occur due to a version mismatch does not identify any defect. In fact, the evidence before the Court suggests the opposite. The Wireless Power Consortium, which Dr. Hernandez acknowledges governs Qi certification, explains that the final digit of the version number "is called the editorial revision number. Editorial revisions include clarifications, integrate new transmitter designs into one document, and may add new test [*sic*] to the test specifications." (Wireless Power Consortium, Knowledge Base (Second Pitsch Decl., Ex. D (dkt. # 55-1)) at 433.) "Editorial revisions of the specification don't introduce new product requirements. Products that are compliant with an older editorial update of the specification are therefore considered compliant with the latest editorial revision. For example, a product that is certified with version 1.2.2 is also compliant with version 1.2.3." (*Id.*) According to the Wireless Power Consortium, then, the BMW charger that is Qi certified for version 1.2.3 is also compliant with version 1.2.4.

Dr. Hernandez was unable to identify any concrete reason why the version mismatch constitutes a defect. Plaintiff contends Dr. Hernandez pointed to "frequency mismatches" between 1.2.3 and 1.2.4. (Dkt. # 90 at 9.) Dr. Hernandez testified that 1.2.4 operated at a 127.7 kHz frequency while 1.2.3 operated at 111 kHz. (Hernandez Dep. (Second Davidovskiy Decl. (dkt. # 94), Ex. 4) at 103:15-104:5.) He stated that "this causes a lot of unexpected behavior," but did not identify how it could produce overheating. (*Id.* at 104:17-19; *see also id.* at 107:11-12 ("it could trigger an unknown behavior").) There is no evidence before this Court that any such unexpected behavior could include, or is likely to include, overheating a phone or overriding the phone's control of the charging process. Dr. Hernandez's speculative opinion that it "could" is insufficient to defeat summary judgment. "'[S]peculation or guesswork' cannot give rise to a genuine dispute of material fact on [an] issue." *Hamilton v. TBC Corp.*, 2019 WL 1119647, at *3

ORDER - 10

(C.D. Cal. Jan. 29, 2019) (first alteration in original) (quoting *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001)).

Finally, Plaintiff points to his own and Mr. Tatro's observations of overheating using his vehicle's wireless charger. Mr. Mendis, Mr. Tatro, and Mr. Cook all tested the charger by putting a phone in it and waiting to see if the phone overheated. Mr. Mendis stated in a declaration that his iPhone became "alarmingly hot" while charging wirelessly in his vehicle. (Mendis Decl. (dkt. # 111), ¶¶ 13-14.) The overheating was "not occasional" but "routine[ ]" and was "so severe that it triggered repeated thermal warnings and shutdowns." (*Id.*, ¶ 14.) The phone was "too hot to touch at times[.]" (*Id.*, ¶ 15.) Mr. Mendis attached to his declaration a still image from a video showing an iPhone screen with the words "Temperature"; "iPhone needs to cool down before you can use it"; and an "Emergency" button. (*Id.*, Ex. 4 (dkt. # 111 at 25).) Mr. Mendis states he tried his wife's iPhone and his own replacement iPhone, and all "consistently overheated" in the wireless charger but not when using "third-party Qi-certified chargers." (*Id.*, ¶ 16.) Mr. Mendis reports that when his vehicle was in service with BMW, he used an unspecified "loaner vehicle" where his iPhone did not overheat while charging wirelessly. (*Id.*, ¶ 26.)

In a February 2020 email to Mr. Cook, Mr. Tatro reported that he placed a Samsung phone in Mr. Mendis's wireless charger, which heated up from 76 to 87 degrees, and an iPhone 10 that heated up from 81 to 114 degrees. (Dkt. # 77 at 42.) He then repositioned the iPhone, and it cooled to 87 degrees while continuing to charge. (*Id.*)

Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, Mr. Mendis's declaration shows that some iPhones overheated regularly in his vehicle's wireless charger. Sometimes his phone became too hot to touch. Assuming it could be provided in admissible form for trial, Mr. Tatro's email reports that an iPhone heated up

to 114 degrees, which is not too hot to touch.[5] Mr. Cook's testing showed that two iPhones became warm but could be handled normally.

That Mr. Mendis's phones overheated in his vehicle's charger but not on other "Qi-certified chargers" offers some evidence that the source of the problem was his vehicle's charger. But a mere scintilla of evidence is not sufficient to defeat summary judgment. *Triton Energy Corp.*, 68 F.3d at 1221. "[T]here must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]" *Anderson*, 477 U.S. at 252. Moreover, the fact that overheating occurred still does not identify any defect in the charger, as required for MVWA claims. There is no evidence as to how these other chargers differed from the BMW charger or any other evidence as to what defect might exist in the BMW charger.

Plaintiff argues circumstantial evidence provided by a "buyer's personal account of diminished performance" is sufficient. (Resp. at 18 (citing *Blake v. Federal Way Cycle Ctr.*, 40 Wn. App. 302, 305-07 (Wash. Ct. App. 1985)).) In *Blake*, the defendants conceded that they created a defect in a motorcycle when attempting an unrelated repair but argued they cured it. 40 Wn. App. at 305. The appellate court held that the plaintiff's testimony describing how the motorcycle did not perform as well as when purchased was sufficient to support the trial court's finding that the defect had not been cured when defendants had not presented any evidence that it had. *Id.* at 307. In contrast, here, the issue is whether there is a defect in the wireless charger.

Plaintiff further argues he need not "pinpoint" the exact defect that causes overheating or disprove all alternative possibilities. (Resp. at 18-19 n. 23 (citing *Pac. Shores Props., LLC v. City*

---

[5] In general, surfaces below 140ºF are considered safe for contact. *See* 16 C.F.R. § 1505.3(e)(2)(ii).

ORDER - 12

*of Newport Beach*, 730 F.3d 1142, 1168 (9th Cir. 2013); *Rogers Potato Serv., L.L.C. v. Countrywide Potato, L.L.C.*, 152 Wn.2d 387, 392 (Wash. 2004)).) In *Pacific Shores* the Court held that, under tort law, plaintiffs need not "positively exclude" every other possible cause of a harm. 730 F.3d at 1168. "Rather, plaintiffs can demonstrate causation by proving that the defendant's wrongful conduct was a 'substantial factor' in bringing about the harm in question." *Id.* It is unclear whether this tort principle applies to MVWA claims. Regardless, by failing to identify any defect in the wireless charger, Plaintiff has not provided sufficient evidence of any wrongful conduct or that such conduct was a substantial factor in the overheating.

In *Rogers*, the defendant did not dispute on appeal that a potato seed crop was damaged. 152 Wn.2d at 390-91. The plaintiff's two experts testified, based on their inspection and expertise, that the damage occurred prior to the time the seed arrived in Washington state—when the seed was under the defendant's control. *Id.* at 390. The Washington Supreme Court held this was sufficient evidence to support the trial court's finding that the defendant was responsible for the damage, regardless of how exactly it occurred. *Id.* at 391. Here, in contrast, the issue is whether there is a defect at all.

Plaintiff has had three years to assemble evidence of a defect and has not done so. The Court concludes Defendant is entitled to summary judgment dismissing Plaintiff's MVWA claim.

    **C.**    **Express Warranty Claims**

Plaintiff alleges claims under the ADMA, MMWA,[6] and common law, arguing Defendant failed to comply with the vehicle's express warranty. (Compl., ¶¶ 6.10, 7.9, 10.2.) The

---

[6] MMWA claims based on a limited warranty "stand or fall" with state warranty claims. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); *see also Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) (For limited warranties, the MMWA "allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action.").

ORDER - 13

limited warranty covers defects in materials or workmanship. (*See* dkt. # 52 at 39.) Defendant contends Plaintiff failed to provide any evidence of a defect. (Mot. at 16.) Plaintiff does not address these claims. The Court concludes Defendant is entitled to summary judgment dismissing Plaintiff's express warranty claims.

### D. ADMA Misrepresentation Claims

Plaintiff alleges Defendant violated the ADMA by "engaging in false advertisement in connection with the subject wireless charging features." (Compl., ¶ 6.10.) This claim requires proof that Defendant "advertised, printed, displayed, published, distributed, broadcasted, televised, or disseminated" a "false, deceptive, or misleading" "statement or representation." RCW 46.70.180(1). Defendant contends the claim fails because Plaintiff has not identified any advertisements representing the wireless charger as "iPhone compatible." (Mot. at 18.)

Plaintiff argues he has presented sufficient evidence of misrepresentation based on his vehicle's window sticker and BMW advertising videos. Plaintiff inaccurately asserts that the window sticker on his vehicle advertised "wireless device charging" and, immediately underneath, Apple CarPlay compatibility, which Plaintiff argues implies that wireless charging works with iPhones. (Resp. at 24 (citing Mendis Decl., Ex. 3 (dkt. # 111 at 23)).) The window sticker does not mention wireless charging. (Mendis Decl., Ex. 3.) Plaintiff also provides still images from what he claims are BMW video advertisements showing an iPhone being used in the wireless charger, although he acknowledges the videos depict different BMW models. (*Id.*, ¶¶ 4-5.) First, phones are barely visible in the images, and it is unclear whether they are iPhones. Second, the images make no clear representation of compatibility. Plaintiff argues that merely showing iPhones in the wireless charger "promis[es] compatibility." (Resp. at 24.) Although the Court must make all reasonable inferences in Plaintiff's favor at this stage, his expansive logic

ORDER - 14

that all iPhones must be compatible with all BMW models is not reasonable. "[I]nferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn." *Blackshire v. Cnty. of Yuba*, 648 F. Supp. 3d 1221, 1231 (E.D. Cal. 2023). A factual predicate is missing.

Plaintiff attempts to reframe the statutory standard, arguing that the "omission of any disclaimer about potential incompatibility with iPhones" made the window sticker "materially deceptive." (Resp. at 25.) Plaintiff's implication that Defendant was required to correct any misconceptions that Plaintiff may have had (but never expressed) finds no support in the statute. Plaintiff fails to identify any deceptive representation, and his misrepresentation claim must be dismissed.

### E. Implied Warranty

Plaintiff alleges his vehicle is "not fit for the particular purpose for which it is required," violating the implied warranty of merchantability under RCW 62A.2-314, and seeks rescission of the vehicle purchase. (Compl., ¶¶ 9.4, 11.6.) Defendant contends it is not a "seller" as defined by the statute, and Plaintiff fails to show any nonconformity substantially impairing his use of the vehicle. (Mot. at 17.) Plaintiff argues he has established contractual privity, and Defendant violated its promise of iPhone compatibility. (Resp. at 28-29.)

To be merchantable, goods must be fit for the ordinary purposes for which such goods are used and conform to the "promises or affirmations of fact made on the container or label if any." RCW 62A.2-314(2)(f). Merchantable does not mean perfect. *Fed. Signal Corp. v. Safety Factors, Inc.*, 125 Wn.2d 413, 427 (Wash. 1994). Courts use a reasonableness standard to determine whether goods meet the statutory requirements. *Id.* at 426.

ORDER - 15

Plaintiff contends Defendant promised or affirmed that the vehicle "included 'wireless device charging' and compatibility with Apple CarPlay[.]" (Resp. at 27.) Both of those representations are true: the vehicle provided wireless charging, and the vehicle was compatible with CarPlay. Plaintiff infers that the two representations, taken together, create a "reasonable expectation" that the wireless charger "would function properly with iPhones." (*Id.*) Plaintiff argues this combined, inferred representation was false because the charger "repeatedly causes iPhones to overheat[.]" (*Id.*) First, an inference is not a "promise" or "affirmation" as the statute requires. As discussed above with regard to the misrepresentation claim, Plaintiff fails to show that providing wireless charging and compatibility with CarPlay amounts to a promise that iPhones would not overheat while charging wirelessly. Second, even if Plaintiff reasonably inferred a promise that wireless charging would not cause iPhones to overheat, he cannot show the representation was false because he fails to provide sufficient evidence that the charger caused the overheating. Without such a showing, Plaintiff fails to show the vehicle is not fit for purpose, and his implied warranty claim fails.

F. **Consumer Protection**

Plaintiff alleges Defendant's violations of the ADMA and MVWA constitute *per se* violations of the WCPA and seeks injunctive relief. (Comp., ¶¶ 8.7, 12.2.) Defendant argues the WCPA claims fail because they depend entirely on Plaintiff's unsupported ADMA and MMWA claims. (Mot. at 19.)

To prevail on a WCPA claim, a plaintiff must satisfy five elements: (1) an unfair or deceptive act or practices, (2) in trade or commerce, (3) with a public interest impact, (4) resulting in injury to business or property, and (5) proximately caused by the misconduct. *Howard v. Patenaude & Felix APC*, 634 F. Supp. 3d 990, 1013 (W.D. Wash. 2022) (citing

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778 (Wash. 1986)). "A *per se* CPA claim lets a plaintiff satisfy the first three parts of this test by proving a predicate violation of 'a statute that contains a specific legislative declaration of public interest impact.'" *Id.* (citation omitted).

Because Plaintiff's ADMA and MMWA claims fail, he fails to establish a *per se* WCPA violation. He contends he can establish the first element because Defendant's advertising about wireless charging was deceptive. (Resp. at 30.) Because he fails to provide sufficient evidence of deceptive advertising, as discussed above, an essential element is lacking, and his WCPA claim must be dismissed.

## IV.    CONCLUSION

Based on the foregoing, the Court GRANTS Defendant's Motion for Summary Judgment (dkt. # 51). Plaintiff's claims, and this action, are DISMISSED.[7] Both motions to exclude expert witnesses (dkt. ## 54, 60) are DENIED as moot. Defendant's motion to strike (dkt. # 118 at 9-15) is GRANTED in part. Dr. Hernandez's declaration (dkt. # 113) is stricken, as is Mr. Mendis's declaration (dkt. # 110) to the extent it offers legal argument.

Dated this 7th day of August, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge

---

[7] The Court notes that Defendant's Motion to Seal (dkt. # 122) remains pending, and will be addressed after it is ripe for consideration. All remaining pending motions (dkt. ## 116, 120) are stricken as moot.